Mr. Marshall, would you call the first case? Yes. Your Honor, this is case number 22-0294. James Duhig, the plaintiff's appellant. He is traveling for and is at the lane. On behalf of the plaintiff's family, Mr. Brent W. Perry. On behalf of the defendant's family, Mr. Richard L. Moore II. I understand there's an open motion, Justice Hutchinson? Yes. The Natasha Singh has a motion to withdraw as an attorney of record. And Mr. Miller is, of course, here on behalf of the law firm who represents Mr. Orr. After consulting with my colleagues, we will grant the motion to withdraw. Not of the law firm, but of Ms. Singh, who has moved on to another employment. Thank you, sir. Thank you. At this time, then, Mr. Terry, on behalf of the appellant, you may proceed. Thank you, Your Honor. May it please the Court, good morning. My name is Brent Terry. I represent James Duhig, the plaintiff and appellant in this matter. The sole issue before the Court this morning is whether the trial court erred in dismissing my client's complaint with prejudice based on a lack of personal jurisdiction. Now, I know that you've read the briefs prior to this morning, but because we are discussing personal jurisdiction and it's necessarily a fact-intensive discussion, I'd like to just give a nutshell version of the events that brought us to this place today. May I ask one preliminary question? Certainly. The plaintiff isn't complaining of any conduct committed by the defendant in Illinois, correct? Correct. The statements were made publicly in Colorado, is that correct? Correct. And therefore, you're not contending that there was specific jurisdiction, correct? As opposed to general. Correct. I think there's an argument that could be made, but I will concede it's a little bit of a stretch to get there. But, yes, our main focus is general personal jurisdiction. And how are there continuous systematic contacts with the State of Illinois so that there would be general jurisdiction here when all we had were text, telephone calls over two and a half months, maybe one trip here? Well, the conduct of Mr. Orr was a little more extensive than that. So, again, to just back up a little bit, Delta 9 is a Colorado LLC. It provides management services to another Colorado company, which produces and distributes not medical marijuana, but just marijuana products generally. The structure of Delta 9 is you have Dr. James Kolka, who is CEO, who at all times has been a resident of St. Charles. Reporting to him is the defendant, Orr, and then reporting to Mr. Orr is my client. The relationships of all these people started back in September of 2014. My client began with Delta 9 as an independent contractor. He worked in that role, as I said, from September of 2014. Around that same time, Mr. Orr was hired by Delta 9 as well. Once Mr. Orr came into the company, my client fell in as a direct report to Mr. Orr, and then Mr. Orr reports to Dr. Kolka, who, again, is here in Illinois. So you have my client and Mr. Orr's supervisor here in Illinois. In his role with the company, Mr. Orr, number one, as you pointed out, had numerous contacts electronically by phone, emails, all these regular business contacts on a daily basis with both his supervisor and my client. In addition to that, though, again, because of his position in the company, Orr came to Illinois at least twice once to try and procure additional financing for the company and had meetings with a company in Geneva to try and accomplish that. Separately from that, he came to avail himself of the state of Illinois itself in trying to apply for a medical marijuana dispensary and production license from the Department of Agriculture. Let me ask you for those points. Everything that you're saying, how do you respond to the argument that Orr's presence in Illinois, whether over the phone or in person, was strictly as Delta 9's agent? Is that not true? I think the conduct of it, certainly the business itself was Delta 9's business. I don't dispute that. Right, well, he wasn't here on personal business of his own benefit. He was here on behalf of the company, right? Right. So have you heard of the fiduciary shield doctrine? Are you aware of that doctrine? I am aware of it. Holds that the conduct of a person in a representative capacity cannot be relied upon to exercise individual personal jurisdiction. So how do you get around that doctrine? Again, I think that the situation here, I think there was a relationship that Orr advanced himself in terms of pursuing the opportunity with Delta 9, working with Dr. Kolka. You know, I'm certainly not going to say that the activity of Orr in terms of applying for the medical marijuana license or obtaining financing wasn't going to go to Delta 9's ultimate benefit. Right. But I think there's, if you look at the totality of his contacts, I think there is more there than just Delta 9 business. The other issue is that in terms of where this case ended up, our main concern with this situation was that it was dismissed with prejudice and we never got a chance to address that issue, nor was it raised by counsel at the time. So accordingly, our pleadings and the subsequent motion that we argued never addressed any of this because the issue itself was just never on the table. But counsel, the standard for general jurisdiction is quite high. I mean, you need to have continuous and systematic contacts, general business contacts. What you described just a few minutes ago and what we've read here doesn't seem to rise to that level. Well, I guess in response to that, I would say that if you look at the defendants' cases that he relies on, the Wiggin case, the Bolger case, I think they're readily distinguishable in those situations versus what we have here. I think you do have a pattern of conduct. I think you have a pattern of contacts. In those cases, I think they're distinguishable because those cases involve transactions that were essentially what I would call a one-off deal. You have a purchase of a single piece of art. You have a purchase of a boat. And in those cases, they talk about the contact there being transient, being occasional, being general in the sense of not continual business contact, but general in the sense of there was an advertising piece that was made. There was a general solicitation for customers, things like that. I think those cases help distinguish where we are in this case because there's a lot more contact, number one, and it's a lot more regular and continual than anything in those types of cases. So you're saying that every time some businessman, if he makes continual visits or makes visits on behalf of a company to a state on a regular basis, then he'd be subject to the jurisdiction, even when the act complained of. You have to concede. The acts that you're specifically suing happened in another state. Oh, I do concede that. I don't dispute that at all. I think that's what we're grappling with. You've got somebody who's acting strictly on behalf of a corporation and is being subject to jurisdiction in Illinois when his only contacts there were on behalf of a company. Well, the. . . And they were not continuous and ongoing, were they? Well, the. . . I think in response to that, the. . . In terms of looking at. . . I guess where I'm struggling with that type of position is that let's assume, just for the sake of argument, that Delta 9's plans had actually come to more productive fruition here. They were clearly on the path to establish the business here. Orr was material in all of that. He was here actively making these contacts, reaching out for financing, reaching out to the Department of Agriculture to get the licensing, things like that. Just because the business ultimately, and Orr was not the decision maker, it would have been the CEOs, ultimately because the business says, you know, we've gone down this route. Either the money's not available or the licensing's too difficult or we just don't like Illinois, and decides not to move forward with that. I don't think that that event, that decision by somebody else, changes the nature of the contacts that led up to that point. Let me quote you a passage from Alpers v. Birch, 235 Illinois Appellate 3452. How do you respond to this? The mere fact that a corporation by which a non-resident is employed, or even if he's a stockholder, is itself subject to Illinois jurisdiction does not subject the non-resident to jurisdiction. So you seem to be collectively putting all of the business activities of Delta 9 along with Mr. Orr's election and saying that's jurisdiction, but you've got to separate those out. I don't think what he's doing, phone calls he's making on behalf of the business or visits is really attributable to him from a jurisdictional standpoint. And to this, I would go back to my earlier comment that I think by dismissing this action with prejudice, number one, those issues weren't raised in the trial court. Number two, had they been, we would have needed to flesh it out factually. This, again, was a startup. It was a startup in Colorado. It was definitely a startup here. These people all have relationships and knew each other prior to. They just didn't fall out of the sky together and say, hey, let's do this. So, you know, I'm not saying that the point is not well taken or that it's not an applicable site, and it may well be. My point is that we never got to develop a case to that point to address those matters or to factually determine any of that through discovery or through even really a motion argument because, again, that was never raised by a defendant. Well, the bottom line is, though, in this particular case, it is your client versus a person, Mr. Orr. Correct. It is not your client versus Delta by Mr. Orr. Correct. Delta 9, thank you. And so we have to look at how it is pled, and you say it was pled with prejudice or it was dismissed with prejudice. But I guess in this type of an action, how could Delta 9 actually be a defendant in this case? I mean, is there any way that you can conceive of that they could have been a defendant in this case? Well, Delta 9 did not publish the statement or made the statement. But it was at a meeting of Delta 9, correct? Correct. But I guess I'm asking in the general, most of your arguments relate to what Mr. Orr allegedly did pursuant to everybody's representations on behalf of Delta 9. How could Delta 9 have been a defendant in this case? Well, the easiest way, if we were to pursue a case against Delta 9, I think there's additional and probably stronger arguments to be made about their liability, mainly stemming from their employment contracts. Both Orr and Dukick had written employment agreements with Delta 9. And I think that there's definitely an issue there as to whether there was a wrongful termination. But I'm talking about this definition case. Right. Could you have – this is – I mean, the allegations fit pretty well into, you know, per se. Right. But could it have been that Delta 9 is a defendant? And I'm having trouble seeing how it could have been. I think, you know, probably the only way that we could have done that would be to – and we would have had to do some discovery on it – would be to see outside of that meeting how that information got distributed out. I'm not saying it didn't. I'm not saying it did. It's certainly possible it did. Again, when you have a CEO here in Illinois, certainly he's going to find out what happened. Certainly with the plaintiff who lived in Illinois, was hired in Illinois, started working in Illinois, came to Colorado at the request of Delta 9 and then was fired within a couple months of that and then came back to Illinois where all his contacts are. I think there is certainly a possibility. And, again, without discovery, I can't say more than that. But there's certainly a possibility that those statements were repeated or disseminated by Delta 9 or directly or someone else. Can I complete that? Yes, please. There would certainly be a possibility that those statements would be disseminated here in some form by someone from Delta 9. But, again, the only way to address that would be through further fact-finding. Which, again, goes to our position that it should not have been dismissed with prejudice. We should have at least had the ability to amend. Thank you, sir. All right. All right. Thank you very much, Mr. Terry. Thank you. You'll have a chance to address the Court again in rebuttal. Thank you. Thank you. Mr. Miller on behalf of the appellate. Good morning, Your Honor. Good morning. Good morning. Again, for the record, Richard Miller on behalf of defendant appellate Brad Orr. And may it please the Court. And can you keep your voice up for us, sir? Yes, I apologize. This is a theme. First, Your Honor, if I may, I would like to address what evidence this Court should consider when ruling on the appeal. I think that's relevant to the history of this case. First of all, plaintiff has filed only one version of his complaint in this case. That five-page complaint was unverified, and it contains no allegations relating to connections between my client, defendant Brad Orr, and Illinois. After receiving that complaint, the next thing the defendant did is I filed a motion to dismiss that complaint based on lack of personal jurisdiction. And that motion was supported by a proper affidavit. The plaintiff then filed a response to that motion to dismiss, but that response lacked an affidavit. A lot of the allegations that you just heard plaintiff's counsel speak about today, those are things that I maintain are not contained in evidence that is in the record for purposes of properly being considered. But to step back for a second, plaintiff filed a response to the motion to dismiss. There was no affidavit attached to it. Next, in my client's reply brief before the trial court, he and I argued that he should prevail because, among other reasons, plaintiff had submitted no admissible evidence that contradicted defendant's affidavits addressing jurisdiction. The court didn't make an ultimate decision on that issue, though, correct? Yeah, well, what happened next is seven days before the oral argument and our motion to dismiss, plaintiff filed a motion asking the court for leave to supplement its response brief with a two-page affidavit. And when we showed up before the trial court for the oral argument, I objected, and the court overruled that objection and it admitted the two-page affidavit at that point in time. And the court even offered me the opportunity to come back and argue at a later date, and we said, you know, let's go ahead and argue right now. So then the court ruled based upon what it had before it, which was two documents, essentially, in terms of the evidentiary record. It is the three-page affidavit submitted by my client and the two-page affidavit submitted by the plaintiff in the case. And so I would maintain that the only evidence that's at issue for purposes of this appeal, it's not these items that are sort of sprinkled in throughout a lot of the proceedings both at the trial court level and I think beyond sprinkle, particularly in the reply brief at the appellate court level. The facts I think that are properly before this court are the evidence and allegations contained in those mere five pages. Three pages from us in the affidavit, two pages from them. And Mr. Orr, in his affidavit, indicates he is there on behalf of Delta 9, correct? Correct. He does not say he's there to start his own company or to make any inroads on his own behalf? To the extent that he speaks to that issue at all in his affidavit, he certainly does not indicate that he was there on his own behalf. I'm not sure how much detail there is in there, if any, regarding any trips he made to Illinois, but certainly there's no – I know there's no indication there that he made any personal trips to Illinois. So your position would be, counsel alleges, obviously, that Orr has conducted some business in Illinois. You don't dispute that. Your position is those activities were strictly on behalf of Delta 9. Is that sort of your position? I would say two things. To the extent that there were any activities that took place in Illinois, they were definitely on behalf of Delta 9. And the fiduciary shield doctrine, I think, Ben, as Your Honor's pointed out, would apply. There's reasons, I think, perhaps, if the court's wondering, and I thought this as I was sitting there listening to the court, there are probably reasons why the fiduciary duty doctrine didn't come up in the paperwork. I was wondering about that. It seemed to be something that you would have raised. Right. And I suspect that the reason that that is is what I was attempting to get to and maybe being a little slow about it, was the fact of because we had a complaint with no allegations regarding personal jurisdiction, we then filed an affidavit that said, look, Orr doesn't have any connections to Illinois. They then had the opportunity to sort of flesh out that issue and say, no, no, no, here's our basis for saying that we do have, that there is a basis for personal jurisdiction. It could be that he came to Illinois a thousand times on personal business. It could be that he came so many times on business. There are ways to get around it. Right. But instead of getting that, what we got was seven days before the actual Orr argument, we got this two-page affidavit. And if I can, what I'd like to do is I'd like to get to what the affidavit actually contains because I think if we focus on those documents, that provides an additional basis and perhaps even a simpler basis, although it's more procedural in nature, for the affirmance of the trial court. As your Honor has pointed out, I know you're well aware of the high standard that applies in this type of situation in terms of holding an individual to be under the jurisdiction of Illinois when he's from a foreign state such as Colorado. The cases talk about the paradigm form for the exercise of general jurisdiction is the individual's domicile. Clearly my client is domiciled in Colorado. That's the Goodyear Dunlop case from the Supreme Court. And the two cases that we rely upon heavily in our papers before the trial court and before this court are the Wiggin v. Wiggin case and the Bolger v. Nautica case. And they talk about the fact that, quote, the foreign defendant has in effect taken up residence in Illinois, unquote, that that's the standard that must be met. Another bit of language that's used, I believe, in both cases is that the standard requires a non-resident defendant to carry on business activity in Illinois, quote, not occasionally or casually, but with a fair measure of permanence and continuity, unquote. So I think when we look at those standards and we look at what's in these affidavits, what we're going to find is that we're nowhere close to that. Our affidavit, the defendant's affidavit, again, there's no indication there of any basis for Illinois jurisdiction. It's just to the contrary. Three pages of it indicates he has no ties, owes no property, does no personal business here, not an officer of any company associated with Illinois. So that affidavit essentially we can set aside, and we're just left, in my opinion, with the affidavit of the plaintiff himself. The plaintiff's affidavit can be found in the records at C132 to 133, and it's only five paragraphs long. It's two pages. And the first three paragraphs don't even speak to any conduct by my client. So what we're left with really are just paragraphs four and paragraphs five. Paragraph five, by the way, is only one sentence. I think if we look at those paragraphs, which is really then what personal jurisdiction, in this case general jurisdiction specifically, hangs entirely on, we don't come close to getting there. And unless the court would prefer that I do not, I'll go ahead and read paragraph four. It's about two sentences long. Well, before you actually read it, I would only suggest that in briefs, you are entitled to include documents that you will rely on for purposes of discussion here or in your briefs, and I didn't find these documents, the complaint, or any of these affidavits attached. We have a record. I understand that. But it's a matter of ease, and it might not be a bad idea in the future to have the preliminary or the critical documents attached to the briefs. That's my only suggestion. And now, if you wish to read, please do so. I will, Your Honor. Let me apologize. I will confess that my public practice is minimal at best, and therefore I wasn't aware that that was appropriate. I did not realize that we should attach those things. I thought, to be honest, had you not said that, I would have thought just the opposite. As long as the court considered it. Okay. Okay, so then back to paragraphs four and five, which I believe are the paragraphs that the entire complaint hangs on in terms of establishing general jurisdiction over my client. Paragraph four states, quote, In November 2014, prior to my move to Colorado, I began communicating directly with Defendant Bradley Orr on a regular basis regarding various projects relating to the setup of Delta 9's business, period. This included emails and telephone conversations regarding the establishment and use of various bank accounts, the installation and setup process for QuickBooks and its check writing functions, the review and approval of company expenses, including payments to outside accountants, an Illinois architect, travel expenses, and reimbursement to members of Delta and the like. Examples of such email exchanges are attached to this affidavit, group exhibit A, and the copies of SAM are true and correct, unquote. So that's all we have there. I think all that paragraph says is that there were email and telephone conversations with my client. It doesn't even specify the time period. It doesn't even specify the number. But as we know from looking at the cases, particularly the Bolger case and the Wiggins case, that things like emails and phone calls and even faxes are not enough to establish general jurisdiction. And certainly here, we don't even have the number. We don't even have the time period. We just have the plaintiff has some emails and phone calls with the defendant. So I think that that paragraph really doesn't come close to meeting the standard, the high standard for establishing general jurisdiction in Illinois over my client. And then we're left just with one last paragraph, which is only one sentence long, and that's paragraph 5 in the affidavit of plaintiff James Dewey. And that one sentence states in its entirety, quote, during the course of conference calls and emails with defendant and other members of Delta 9, I became aware of defendant's focus on Illinois and Florida and its efforts to develop business in those states on behalf of Delta 9 by acquiring additional capital investment and determining requirements for obtaining a marijuana cultivation and dispensary license, unquote. So again, that's a rather vague sentence in my mind. It doesn't indicate that any trips were made here. It doesn't indicate that my client was ever present here. Really what it describes there, such things as a focus on Illinois and Florida and its efforts to develop business, I think all those things could be done from a person's computer on their desk. And so I think paragraph 5 is even weaker than paragraph 4 in terms of establishing that there's any jurisdiction, that there's any basis for it to meet the high standard of general jurisdiction over the defendant. The last point I would make, and it's related, is that if a court goes to the reply brief of the plaintiff in this case, you'll find on pages 2 and 3 there are a list of 12 items that plaintiff claims the trial court record discloses. That bothered me when I reviewed that list of 12 things. There's not citations to the record there. And I would certainly argue to the court that those items are not proper before this court, that some of those items are sprinkled into the record and not properly as evidence, and some of them, quite a few of them, have never appeared before I received that reply brief. And so I would respectfully suggest to the court that it should focus its attention on the evidence that's properly before it. Of those 12 items, you can argue about one or two of them, but I really think that only items number 10 and 11 are items that are properly before the court. When you just look at those items again, no general jurisdiction. But finally, I would say that even if the court were to consider all 12 of those allegations, even if the court were to presume that those things all were properly before it and that they were true, which I contend the court should not do, I would still maintain that they would not change the fact that defendant Orr did not have the type of systemic and continuous contacts with Illinois that would be necessary to subject him to the general jurisdiction of our courts. Thank you. Thank you. Thank you, Your Honor. Mr. Terry, you may address the court and rebuttal. Thank you. Again, the defendant actually, in one way at least, I think actually reinforced a point I made. By, again, going back to Wiggin and Bulger, and he's absolutely correct when he quotes the cases as saying that they talk about it, that in effect the defendant needs to have taken up residence, that it can't be occasional or transitory. Again, those were the reasons that the courts in those cases denied and said that there was no personal jurisdiction. And as to the part about e-mail and telephone communication, number one, I think we need to be cognizant of the way business is done today, especially across state lines, that it is going to be vastly based on electronic communication, especially when you have a company that's in Colorado but a CEO who's here in Illinois. There's no other way for him to communicate. He's not going to go to daily meetings. My client, in answering to Mr. Orr's supervision, is not going to go to daily meetings in Colorado to try and just conduct normal business. E-mail, telephone conference calls, all the things that we kind of take for granted now, I mean, that's a material part, if not the most fundamental part of business. Very little of it is done face-to-face anymore. So that by itself I don't think is dispositive at all in this case. In addition, I go back to what I had said earlier, that even though counsel correctly states the holdings of those cases, I think there's a vast difference in the fact patterns of those cases. Aside from the electronic communications in those cases, a fundamental issue to both of those are, again, dealing with one-off transactions. It's not a continuing business enterprise. It's not even an enterprise that's trying to expand to Illinois or considering expanding to Illinois or anything like that. They're simple one-off sales. And I think that's a huge difference between the situation in those cases and what we have here. Well, I think there's another distinction, at least that I have thought about. In both of Folger and Wiggins, the defendant is a company, essentially. Well, the sister-in-law is involved too, but we'll separate her. Ms. Anna Wiggins is involved, but let's separate her from the Routens. These companies are doing business. They are buying art and selling art and buying boats and selling boats. And to make the decisions that were made in those cases, I think even as you described, the current state of business across state lines with e-mails and phone calls under the law was even risky. However, here, as I said, we have a person that is being sued, not a business, not the CEO of the business, but a person who allegedly said these slanderous, defamatory things that inferred criminal conduct on behalf of your client. It's not Delta 9. So how can we conserve your client? Your client can serve Mr. O'Rourke. That's always attainable. But the service alone is not sufficient. There has to be the contact. What is his contact to Illinois outside of Delta 9? That's the question. And how significant is that contact? I just don't see it in the record. And if I'm missing something, I want to be directed toward that. Right. And I think to be candid, I'm not sure that piece of it is specifically addressed in the record. I think the overall contact, the overall pattern of conduct is there, but I'm not sure to directly address your question it is there. But, again, that would go more to my position that instead of dismissing it with prejudice, we should have at least had the opportunity to amend our complaint to either address that issue specifically or to expand it to include Delta 9 as a defendant in the action. Well, you did have the opportunity to respond to the motion to dismiss, however, and you did do that, including the affidavit that was filed even prior to the oral argument. Right. So you have had the opportunity. We did, but we didn't specifically address that issue as it wasn't being raised at that point. We didn't get. Well, but you knew jurisdiction was the issue. Correct. Okay. All right. Thank you very much. Thank you. On behalf of the Court, I'd like to thank both counsel for the quality of their arguments here this morning. The matter will, of course, be taken under advisement. A written decision will issue in due course. We will stand in a brief recess to prepare for the next case.